## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PETS ALONE SANCTUARY ) | |
| OF LINCOLN COUNTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-CV-775 PLC |
| ) | |
| MIDWEST FAMILY MUTUAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant Midwest Family Mutual Insurance Company's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 7]  Plaintiff Pets Alone Sanctuary of Lincoln County opposes the motion. [ECF No. 10]  For the following reasons, the motion is granted in part and denied in part.

**I.     Background**

The facts as alleged in Plaintiff's petition are as follows:  Defendant issued Plaintiff, a Missouri non-profit corporation, a general liability insurance policy ("Policy") that was in effect during the relevant time period. [ECF Nos. 3 at ¶¶ 1, 3; 1-1]  In December 2018, Plaintiff filed an action in state court asserting claims of defamation and civil conspiracy against three individual defendants. [Id. at ¶ 9]  Those defendants (hereinafter, "Counterclaimants") filed counterclaims against Plaintiff and several of Plaintiff's board members, alleging abuse of process, malicious prosecution, and civil conspiracy. [Id. at ¶ 14]

1

Plaintiff reported the counterclaims to Defendant, which acknowledged coverage under the Policy. [Id. at ¶¶ 18, 19] Defendant retained attorneys Benjamin Fletcher and David Berwin ("Attorneys") with Evans & Dixon LLC ("Law Firm") to represent Plaintiff and the board members in defending the counterclaims.[1] [Id. at ¶¶ 21, 25] The trial court bifurcated the counterclaims against Plaintiff and set them for trial in September 2021. [Id. at ¶¶ 23-24]

The evening before trial, Mr. Berwin communicated information to Defendant that "could drastically increase the award of compensatory and punitive damages against [Plaintiff] in the Counterclaims." [Id. at ¶ 26] Approximately five hours later, and twelve hours prior to the start of trial, Mr. Fletcher informed Plaintiff that the newly acquired information "impacted the manner in which they could conduct the defense of the Litigation" and raised "ethical issues" for Law Firm. [Id. at ¶ 27] Mr. Fletcher further advised that Attorneys and Law Firm would seek to withdraw as counsel the next morning. [Id.]

On the morning of trial, Attorneys represented and advised Plaintiff in settlement negotiations with Counterclaimants. [Id. at ¶¶ 28-29] During negotiations, Attorneys contacted Defendant, and Defendant refused to "increase its settlement offer beyond the amount it had already allocated toward settlement *before* Berwin's correspondence" the previous day. [Id. at ¶ 31 (emphasis in original)] The parties settled the case for an amount greater than that authorized by Defendant, and Plaintiff agreed to use its own funds to pay the difference. [Id. at ¶ 34]

Plaintiff filed a petition in the Circuit Court of Lincoln County alleging Defendant breached: (1) "the terms of the Policy, including, but not limited to failing to provide a full and complete defense to the Counterclaims asserted in the litigation"; and (2) "its duty to act in good

---

[1] Counterclaimants later dismissed their counterclaims against Plaintiff's board members. [Id. at ¶ 22]

faith regarding settlement of the Counterclaims[.]" [ECF No. 3]  Defendant removed the case to federal court on the basis of diversity jurisdiction.  [ECF No. 1]

Defendant moves to dismiss Plaintiff's petition for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  [ECF No. 7]  Defendant argues that Plaintiff failed to state a claim for:  (1) breach of duty to defend because Defendant never withdrew its defense and Attorneys represented Plaintiff in settlement negotiations; and (2) bad faith failure to settle because "a settlement was ultimately reached."[2]  [ECF No. 8]  In response, Plaintiff contends that:  (1) Defendant breached the duty to defend when Law Firm, acting as Defendant's agent, refused to take the case trial; and (2) a settlement does not relieve Defendant from its duty to act in good faith and fulfill its obligations under the Policy.  [ECF No. 10]

## II.   Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept as true all of the factual allegations in the complaint and view them in the light most favorable to the plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).  The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

---

[2] Defendant does not dispute that it had a duty to defend Plaintiff under the terms of the Policy. [See ECF No. 8 at 4]

### III. Discussion

#### A. Duty to Defend

Defendant contends that Plaintiff failed to state a claim for breach of the duty to defend because "Defendant never withdrew its defense and the counsel retained by Defendant continued to defend and to 'represent and advise [Plaintiff] during the settlement negotiations,' in which settlement was ultimately reached." [ECF No. 8 at 5 (quoting ECF No. 3)] Plaintiff acknowledges that "the instant cause of action does not present the 'usual' case of breach of duty to defend by an insurance company," but asserts that Defendant breached its duty to defend when Law Firm refused to defend Plaintiff at trial. [ECF No. 10 at 3]

The duty to defend arises "when there is a possibility or potential for coverage at the outset of the case." Allen v. Bryers, 512 S.W.3d 17, 31 (Mo. banc 2016). "The duty to defend is determined by comparing the insurance policy language with facts: '(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case.'" Id. (quoting Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 553 (Mo. banc 2014)). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Id. (quoting Columbia Cas. Co. v. HIAR Holding, LLC, 411 S.W.3d 258, 265 n. 10 (Mo. banc 2013)).

"An insurer's wrongful failure to defend constitutes a breach of contract." Sprint Lumber, Inc. v. Union Ins. Co., 627 S.W.3d 96, 119 (Mo. App. 2021). "If an insurer wrongfully refuses to defend, it is liable to the limits of its policy plus attorney fees, expenses and other damages." Id. (citing Bryers, 512 S.W.3d at 38).

In its petition, Plaintiff alleged that:  Defendant issued Plaintiff the Policy; the Policy covered the counterclaims asserted against Plaintiff; Defendant retained Law Firm to defend Plaintiff; Law Firm refused to take the case to trial and threatened to withdraw the morning of trial; and Law Firm represented Plaintiff in settlement negotiations.  [ECF No. 3]   Plaintiff claimed that Defendant's failure "to provide a full and complete defense to the [c]ounterclaims" breached the duty to defend.  [ECF No. 3 at ¶ 35]

Assuming, without deciding, that an insurer may be liable for the actions of counsel it retained to defend the insured[3], the petition does not plead sufficient facts to draw a reasonable inference that Defendant breached its duty to defend.  Indeed, Plaintiff's petition establishes that Defendant did not disclaim coverage, but rather acknowledged that the Policy covered the underlying litigation and retained Law Firm to defend Plaintiff.

Additionally, the facts alleged reflect that Attorneys prepared for and intended to defend Plaintiff at trial.  Attorneys only refused to try the case when they learned of "new information" that "impacted the manner in which they could conduct the defense of the Litigation" and presented "ethical issues" for Law Firm.  Nothing in the petition suggests that Attorneys' refusal to defend

---

[3] Defendant does not challenge, and therefore the Court does not address, whether Law Firm's refusal to defend Plaintiff at trial may be imputed to Defendant for purposes of a breach of contract claim.  The Court notes, however, that Plaintiff cites no authority supporting the proposition that an insurer may be liable for the negligence or malpractice of the attorneys it retained to defend the insured.  To the contrary, "courts and … § 12 of the Restatement [of the Law of Liability Insurance] have rejected the notion that insurers are vicariously liable for any malpractice committed by defense counsel." Sapienza v. Liberty Mut. Fire Ins. Co., 389 F.Supp.3d 648 (D. S.D. 2019).  See also In re Farmers Texas Cnty. Mut. Ins. Co., 621 S.W.3d 261,269 (Tex. 2021) ("[O]rdinarily a liability insurer is not vicariously responsible for the conduct of an independent attorney it selects to defend an insured.") (quotation omitted); Restatement of the Law of Liability Insurance § 12 cmt. e & Reporter's Note e (2019).  Most courts that have addressed this question have found that insurers are not vicariously liable for defense counsel's errors but recognize that insurers may be liable for their own misconduct, such as in overriding defense counsel's independent professional judgment.  Sapienza v. Liberty Mut. Fire Ins. Co., No. 3:18-CV-3015 RAL, 2019 WL 5206289, at * (D. S.D. Oct. 16, 2019) (collecting cases).  See also Sapienza, 389 F.Supp.3d at 654, 655.

5

the case at trial was guided by anything other than their independent professional judgment. See, e.g., Sapienza v. Liberty Mut. Fire Ins. Co., 389 F.Supp.3d 648, 655 (D. S.D. 2019) (dismissing claim for breach of the duty to defend where the insured did not allege that the insurer overrode defense counsel's professional judgment or that the insurer's actions caused them damages). Nor does Plaintiff allege that the outcome of a trial would have been more favorable to Plaintiff than the settlement Law Firm negotiated. The Court therefore dismisses Plaintiff's claim for breach of the duty to defend.

### B. Bad Faith Failure to Settle

Defendant argues that Plaintiff failed to state a claim for bad faith failure to settle because Plaintiff did not allege that: (1) Plaintiff was exposed to a judgment or settlement in excess of the policy; (2) Defendant prohibited Plaintiff from "voluntarily assuming any liability or settling any claim"; and (3) the amount demanded by Counterclaimants was within the Policy limit. ( [ECF No. 8 at 6-7]  Finally, Defendant argues that the "Plaintiff fails to allege bad faith refusal to settle because Plaintiff alleges a settlement was reached." [Id. at 7]  Plaintiff counters that the alleged deficiencies identified by Defendant are not fatal to its claim. [ECF No. 10]

"It is well established that an insurer owes to its insured a duty to act in good faith in settling a claim against the insured[.]" Scottsdale Ins. Co. v. Addison Ins. Co., 448 S.W.3d 818, 829 (Mo. banc 2014) (citing quoting Zumwalt v. Utilities Ins. Co., 228 S.W.2d 750, 754 (Mo. banc 1950)). Where the insurer wrongfully breaches the duty "to evaluate and negotiate third-party claims in good faith" and "refuses to settle within policy limits, the insurer may be held liable for resulting losses to the insured." Sprint Lumber, 627 S.W.3d at 118 (citing Shobe v. Kelly, 279 S.W.3d 203, 212 (Mo. App. 2009)).

Under Missouri law, "a bad faith refusal to settle action will lie when a liability insurer:

6

(1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy." Scottsdale, 448 S.W.3d at 817 (citing Zumwalt, 228 S.W.2d at 753).  Additionally, "[i]mplicit in the 'refusing' aspect of the bad faith element is a showing that the insurer had a reasonable opportunity to settle within the policy limits." Purscell v. Tico Ins. Co., 790 F.3d 842, 847 (8th Cir. 2015).  For purposes of a bad faith failure to settle claim, bad faith is "the intentional disregard of the *financial interest* of [the] insured in the hope of escaping the responsibility imposed upon [the insurer] by its policy." Scottsdale, 448 S.W.3d at 828 (alterations in original) (quoting Zumwalt, 228 S.W.2d at 754).  See also Purscell, 790 F.3d at 846-47; Sprint Lumber, 627 S.W.3d at 119.

      Here, Plaintiff alleged that Defendant "breached its duty to act in good faith regarding settlement of the [c]ounterclaims" by:  (1) failing to have an employee with authority to negotiate settlement available to discuss settlement on the day of trial; (2) failing to consider the "facts and circumstances" that Mr. Berwin communicated to Defendant the day before trial; (3) failing to consider Law Firm's intent to withdraw from representation; and (4) designating the file as "closed" and refusing to consider an increase in settlement authority "despite the discovery of additional facts that could significantly increase [Plaintiff's] exposure[.]"  [ECF No. 3 at ¶ 36] Plaintiff further pleaded that, as a result of Defendant's alleged bad faith, Plaintiff "has been damaged in the amount that it had to pay to settle the case" and in attorney fees.  [Id. at ¶¶ 37, 39]

      Defendant asserts that Plaintiff failed to state a claim for bad faith failure to settle because Plaintiff did not allege that it was exposed to a judgment or settlement in excess of the Policy's limits.  In support of its position that "Plaintiff cannot maintain a bad faith refusal to settle claim if Plaintiff was not exposed to a judgment or settlement in excess of the policy limits," Defendant

cites Shobe, 279 S.W.3d at 210. [ECF No. 8 at 7] There, the Missouri Court of Appeals held that the evidence supported the jury's finding that the insurer acted in bad faith when it failed to settle a personal injury action against the insured.[4] Id. at 211. The court explained that the tort of bad faith failure to settle "creates liability in order to compensate an insured where she has been wrongly subjected to an excess judgment, and to deter insurance companies from failing to fulfill their fiduciary duties to their insureds." Id. The court did not, however, suggest that an excess judgment (or settlement) was a necessary element of a bad faith failure to settle claim.

Shobe and other Missouri cases refer to settlements and judgments in excess of policy limits because, in those cases, the insured sought to recover the excess amount as damages. See, e.g., Overcast v. Billings Mutual Ins. Co., 11 S.W.3d 62, 67-68 (Mo. banc 2000); Zumwalt, 228 S.W.2d at 753; Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 93 (Mo .App. 2005). Those courts were ruling on the facts of damages presented. They were not holding that an excess judgment or excess settlement was required to state a claim for bad faith failure to settle. See Scottsdale, 448 S.W.3d at 827 (rejecting argument similarly based on the language in Zumwalt and other Missouri cases that settlement negates a bad faith claim because the insurer's breach must result in a judgment). This Court declines to read such a requirement into the case law because the insurer breaches its duty to protect the insured's financial interest whether the breach results in a settlement or judgment within the policy limits or in excess of the policy limits. See e.g., Sprint Lumber, 627 S.W.3d at 120 (reversing summary judgment for the insurer on the

---

[4] In that case, the plaintiff insured presented evidence that the defendant insurer repeatedly denied the insured's claims, refused to defend the suit, and rejected an offer of settlement within the $50,000 policy limit. Shobe, 279 S.W.3d at 207. A judgment was subsequently entered against the insured for over $130,000, and, in a separate action, a court found that the insured's claims were covered under her policy. Id. at 207-08. Thereafter, the insurer paid the $50,000 policy limit and interest to the plaintiffs, but over $124,000 remained outstanding. Id. The insured then filed this action against the insurer alleging, among other claims, bad faith failure to settle.

8

insured's bad faith failure to settle claim where the insurer denied coverage and the insured settled the underlying suit within the policy limits then sought reimbursement from the insurer).

Even if, as other jurisdictions have held[5], a bad faith failure to settle claim requires liability in excess of the policy limit, Plaintiff alleged sufficient facts to state a claim that Defendant breached its contractual obligations regarding indemnity and settlement.  Plaintiff alleged that Defendant withheld payment for a covered loss and demanded Plaintiff contribute its own funds to settle the counterclaims and avoid paying a potentially significant damages award.  An insurer who refuses to indemnify fully a settlement covered under its policy may be liable "for all damages flowing from" the breach of its contractual duty and failure to settle within its policy limits. Columbia Cas. Co., 411 S.W.3d at 273-74 (insurer was responsible for all damages flowing from breach of the duty to defend and indemnify, even though the case did not involve a claim for bad faith); In re Farmers Tex. Cnty. Mut. Ins. Co., 621 S.W.3d 261, 269-70 (Tex. 2021) (dismissing the insured's claim for bad faith failure to settle where the claim settled within policy limits, but holding that insured "may pursue a claim for breach of [the insurer's] duty to indemnify").  The Court therefore finds that the fact that the settlement did not exceed the Policy limits is not fatal to Plaintiff's claim.

Next, Defendant briefly argues, without citation to authority, that Plaintiff failed to state a claim because Defendant did not prohibit Plaintiff from "voluntarily assuming any liability or

---

[5] The Texas Supreme Court addressed this issue and held that the insured failed to state a claim for negligent failure to settle because her liability did not exceed the policy limits. In re Farmers Tex. Cnty., 621 S.W.3d at 267.  The court reasoned that, "when a claim settles within policy limits," a bad faith claim "is not needed to resolve a conflict between insured and insurer.  The insurance contract fully addresses the parties' common-law obligations in that circumstance." Id. at 268.  See also Restatement of the Law of Liability Ins. § 27 cmt. *c*.("[W]hen the allegation is merely that the insurer's decision was unreasonable in an individual case, no such common-law damages will be available when a judgment or settlement is within the limits of the insurance policy.").

9

settling any claim."  However, as Plaintiff points out in its response to Defendant's motion to dismiss, the Policy, which Plaintiff filed along with the petition, provided:  "No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."  [ECF No. 10 at 5 (quoting ECF No. 1-1 at 87)]  Because a court, when ruling on a motion to dismiss, may consider documents attached to the complaint, Owen v. Gen. Motors Corp., 533 F.3d 913, 917 (8th Cir. 2008), Plaintiff's failure to plead this element in the petition is not fatal to its claim for bad faith failure to settle.

Defendant also contends that Plaintiff failed to state a claim for bad faith failure to settle because Plaintiff did not allege the settlement demand was within the Policy's limit.  In its brief in response to Defendant's motion to dismiss, Plaintiff states:  "Even if not explicitly stated, implicit in Plaintiff's Petition is the fact that it settled the case within the Policy limits as it is seeking damages for money it had to pay out of pocket."[6]  [ECF No. 10 at 5]  Defendant, in its reply brief, confirms that the settlement "was well within the policy limits of the Policy[.]"  [ECF No. 12 at 4]  The Court declines to dismiss Plaintiff's motion for failure to plead a fact that is both contained in the briefing on the motion to dismiss and affirmed by the parties.

Finally, Defendant asserts that "Plaintiff fails to allege[] bad faith refusal to settle because Plaintiff alleges a settlement was reached."  [ECF No. 8 at 7]  According to Defendant, "[b]ecause Plaintiff voluntarily 'agreed to use its own funds' to pay the difference, Plaintiff was not exposed to an excess judgment and Plaintiff cannot maintain a claim for bad faith refusal to settle."[7]  [Id.

---

[6] Alternatively, Plaintiff requests leave to file an amended complaint "making its allegations more specific and definite."  [ECF No. 10 at 5]

[7] The case upon which Defendant relies does not support Defendant's position.  See Sprint Lumber, 627 S.W.3d at 118.  There, the insurer repeatedly denied the plaintiff insured's claim for coverage under its liability policy and offered, one month before trial, to defend the plaintiff under a reservation of rights.  Id. at 103-04.  The insured rejected the offer, demanded defense without reservation, and informed the insurer that the plaintiff in the underlying litigation was willing to

10

at 8]

An insured's settlement of the underlying litigation does not negate the insured's action against the insurer for bad faith failure to settle. See Scottsdale, 448 S.W.3d at 830 ("This Court has already found that a cause of action for bad faith refusal to settle can be maintained even though the insurer settled for its policy limits and no judgment was entered."); Sprint Lumber, 627 S.W.3d at 120 (the insured presented facts establishing bad faith failure to settle where the insured settled the underlying litigation and demanded reimbursement from insurer). "The insurer's duty is to protect the insured financial interests, which are impacted by an insurer's breach of duty" whether the insured goes to trial or ultimately settles "to protect itself from further liability[.]" Scottsdale, 448 S.W.3d at 828. "There is no attraction to a rule that rewards bad faith by relieving the insurer of excess liability if it forces harsh choices onto an insured facing a huge judgment." Id. (quotation omitted). Moreover, "[a]llowing a bad faith refusal to settle claim when the insured settles fosters Missouri's policy encouraging settlements." Id.

For the above reasons, the Court finds that Plaintiff pleaded a plausible claim for bad faith failure to settle within policy limits. The Court therefore denies Defendant's motion to dismiss Plaintiff's bad faith failure to settle claim.

After careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss [ECF No. 7] is **GRANTED in part** and **DENIED in part.**

---

settle for an amount within the policy limits "but that a settlement had to be reached that day." Id. at 104. The insured settled the underlying suit and demanded reimbursement and indemnification by the insurer. Id. The Missouri Court of Appeals reversed summary judgment for the insurer because the insured's amended petition "asserted facts that supported claims for … bad faith failure to settle." Id. at 120.

**IT IS FURTHER ORDERED** that the Plaintiff's claim for breach of the duty to defend is **DISMISSED with prejudice**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of November, 2022