# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Pets Alone Sanctuary of Lincoln County,<br>Plaintiffs,<br><br>v.<br><br>Midwest Family Mutual Insurance Company<br><br>Defendants. | Civil Action No. 4:22-CV-00775-PLC<br><br>*Removed from:*<br><br>THE CIRCUIT COURT OF<br>ST. LOUIS COUNTY MISSOURI<br><br>CASE NO. 22SL-CC02987 |

## **DEFENDANT'S ANSWER AND COUNTERCLAIMS**

COMES NOW Defendant Midwest Family Mutual Insurance Company ("MFM"), and in answer and affirmative defense to Plaintiff's Petition (Doc. 3), states:

1. MFM is without sufficient information to admit or deny the allegations in Paragraph 1, therefore denies.

2. Admitted.

3. Admitted.

4. MFM is without sufficient information to admit or deny the allegations in Paragraph 4, therefore denies.

5. Admitted.

6. MFM is without sufficient information to admit or deny the allegations in Paragraph 6, therefore denies.

7. Admitted.

8. MFM is without sufficient information to admit or deny the allegations in Paragraph 8, therefore denies.

9. Admitted.

10. Admitted.

11. Admitted.

12. MFM admits the Counterclaim filed by Roberts in "the Litigation" (as referred to by Plaintiff, or the "Underlying Lawsuit", as referred to herein), included a count of defamation against PALS and Cherry, and MFM asserts such Counterclaim speaks for itself.

13. Admitted.

14. Admitted.

15. MFM admits the Counterclaim filed by Wieman and Pruitt in the Underlying Lawsuit asserted abuse of process, malicious prosecution, and civil conspiracy, and MFM asserts such Counterclaim speaks for itself.

16. MFM admits Roberts filed an Amended Counterclaim in the Underlying Lawsuit and that such counterclaim asserted abuse of process, malicious prosecution, and civil conspiracy, and MFM asserts such Amended Counterclaim speaks for itself.

17. Due to the undefined term "The Policy", MFM is unable to admit or deny the allegation. Additionally, although the MFM insurance policy at issue contains some of the language that is seemingly quoted in Paragraph 17, some of the seemingly quoted language in Paragraph 17 is not contained in the applicable policy and the language also fails to include other relevant language. Therefore, Paragraph 17 is denied, and MFM asserts the insurance policy at issue speaks for itself.

18. Admitted.

19. MFM admits it agreed to provide a defense to PALS against the Counterclaims in the Underlying Lawsuit under a full reservation of rights, and denies all other allegations in Paragraph 19 not admitted in this Paragraph.

20. Admitted.

21. MFM admits it retained the law firm of Evans & Dixon, LLC, including Benjamin Fletcher, to represent PALS, Cherry, Raeker-Bickel, DiStefano, Sloan, and Turley in defense of the Counterclaims in the Underlying Lawsuit, and deny all other allegations in Paragraph 21 not admitted in this Paragraph.

22. Admitted.

23. Admitted.

24. Admitted.

25. MFM admits David Berwin was an attorney with Evans & Dixon and was involved in the defense of PALS against the Crossclaims in the Underlying Lawsuit, and is without sufficient information to admit or deny whether he filed an entry of appearance, and denies all allegations in Paragraph 25 not admitted in this Paragraph.

26. MFM admits David Berwin sent an email to MFM at or around 5:42 p.m. on September 20, 2021, which email speaks for itself.

27. MFM is without sufficient information to admit or deny the allegations in Paragraph 27, therefore denies.

28. Admitted.

29. MFM admits Evans & Dixon, Fletcher and Berwin continued to represent and advise PALS during the settlement negotiations on September 21, 2021, and is without sufficient information to admit or deny all other allegations in Paragraph 29 not admitted in this Paragraph, therefore denies.

30. MFM admits Fletcher, Berwin, and Evans & Dixon attempted to and did contact MFM during settlement negotiations on September 21, 2021, and is without sufficient knowledge to admit or deny all other allegations in Paragraph 30 not admitted in this Paragraph.

31. Denied.

32. MFM admits that Roberts, Wieman, and Pruitt made settlement demands on September 21, 2021 in an amount greater than the authority that had been provided by MFM; is without sufficient information to admit or deny the settlement demand was the "bottom-line" of Roberts, Wieman, and Pruitt, and deny the settlement offer was confidential or that the ultimate settlement agreement was confidential in regard to MFM; therefore, MFM denies all allegations in Paragraph 32 not admitted in this Paragraph.

33. MFM is without sufficient information to admit or deny the allegations in Paragraph 33, therefore denies.

34. MFM admits PALS agreed to use its own funds to settle the case, and is without sufficient information to admit or deny all other allegations in Paragraph 34, therefore denies all other allegations in Paragraph 34 not admitted in this Paragraph.

35. Pursuant to the Court's Memorandum and Order dated November 8, 2022, Plaintiff's claim for breach of contract has been dismissed with prejudice. Therefore, no response is warranted to Paragraph 35, which asserts MFM breached the terms of the Policy. To the extent a response is still needed, MFM denies.

36. Denied, including all subparts.

37. Pursuant to the Court's Memorandum and Order dated November 8, 2022, Plaintiff's claim for breach of contract has been dismissed with prejudice. Therefore, no response is warranted to Paragraph 37, which asserts MFM breached the terms of the Policy. To the extent a response is still needed, MFM denies.

38. Denied.

39. Denied.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant MFM respectfully requests to hence be dismissed, or, alternatively, that Plaintiff take naught, and for its costs herein incurred and expended and for such other relief as the Court may deem just and proper.

## **AFFIRMATIVE DEFENSES**

COMES NOW Defendant MFM and in further answer to Plaintiff's Petition asserts the following affirmative defenses supported by current evidentiary support or likely to be evidentiary support after a reasonable opportunity for further investigation and discovery:

1. As detailed in Defendant's Motion to Dismiss, Plaintiff's Petition fails to state a claim upon which relief can be granted, including but not limited to failing to state a claim for bad-faith failure to settle because a settlement was reached within the policy limits and, therefore, there is no judgment or settlement in excess of the limit of the MFM insurance policy to which Plaintiff is exposed.

2. Plaintiff's claims are barred or limited due to Plaintiff's failure to satisfy all conditions precedent in the MFM Policy at issue and/or its failure to satisfy any prerequisites, conditions or obligations the MFM Policy at issue requires to enforce rights and benefits under the MFM Policy at issue, including but not limited the cooperation clause and the concealment, misrepresentation, and fraud clause;

3. Plaintiff's claims are barred or limited by unclean hands, waiver, estoppel and/or laches, due to, *inter alia*, Plaintiff's agreement to contribute to the settlement at issue and/or Plaintiff's failure to disclose and/or concealment of certain information relevant to the defense and coverage analysis;

4. Plaintiff's claims are barred or limited by the doctrine of unjust enrichment due to, *inter alia*, Plaintiff's failure to disclose and/or concealment of certain information relevant to the defense and coverage analysis

5. Plaintiff's claims are barred or limited by the doctrines of assumption and/or of accord and satisfaction due to, *inter alia*, Plaintiff's agreement to contribute to the settlement at issue;

6. Plaintiff's claims are barred or limited because MFM had no duty to indemnify Plaintiff in regard to the claims asserted in the Underlying Lawsuit.

7. Plaintiff's claims are barred or limited because, pursuant to the terms of the MFM insurance policy at issue, MFM is not liable for any damages against or settlement amounts agreed to by PALS to which the insurance does not apply.

8. Plaintiff's claims are barred or limited because the MFM insurance policy at issue was void due to Plaintiff's concealment, misrepresentation or fraud;

9. Plaintiff has failed to properly state a claim for attorney fees and interest;

10. MFM reserves the right to amend and add affirmative defenses as warranted through further discovery in this matter.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant MFM respectfully requests to hence be dismissed, or, alternatively, that Plaintiff take naught, and for its costs herein incurred and expended and for such other relief as the Court may deem just and proper.

## COUNTERCLAIMS

COMES NOW, MFM, and for its Counterclaims against Plaintiff Pets Alone Sanctuary of Lincoln County ("PALS"), alleges and states:

1. Defendant MFM incorporates all admitted allegations to Plaintiff's Petition.

2. On December 7, 2017, PALS filed a lawsuit against Edna Roberts ("Roberts"), Carol Wieman ("Wieman"), and Megan Pruitt ("Pruitt") in the Circuit Court of Lincoln County, styled *Pets Alone Sanctuary of Lincoln County v. Edna J. Roberts, et al.*, Lincoln County Circuit Court Case No. 17L6-CC00153 ("Underlying Lawsuit"), asserting defamation and Civil Conspiracy.

3. On March 7, 2018, PALS filed its First Amended Petition ("PALS' Pet.") in the Underlying Lawsuit.

4. PALS' defamation claim against Roberts, in Count I of PALS' Petition, alleged Roberts made the following false statements regarding PALS:

    a.     "I admire their rescue stories it takes determination to bring in a stray and never try to find the owner."

    b.     That PALS wrongfully adopts pets out from underneath their owners.

(PALS' Pet. ¶ 9).

5. PALS' defamation claim against Wieman, in Count II of PALS' Petition, alleged Wieman made the following false statements regarding PALS:

    a.     "They are only in it for the money and they decide if you're a good owner and if they think your [sic] not you don't get your animal back. Worker [sic] have even said they hide animals so the owner doesn't know that they are there.",

    b.     "If a pet goes there they normally will never go back to there [sic] owner. They always find a way to keep them.",

    c.     "They inflate the bills so the owner can't afford to get the dog back."

(PALS' Petition ¶ 16).

6. PALS' defamation claim against Pruitt, in Count III of PALS' Petition, alleged Pruitt made the following false statements regarding PALS:

    a.     "They have dogs knowing they have homes then take them to the city to adopt out so they don't go back to their owners.",

      b.      [PALS] directed its employee to steal the dog known as Bear from Sheila Henkel,

      c.      "Pals doesn't seem to care about chips. In the past they've scanned dogs, found chips and still wrote it off as a stray.",

(PALS' Petition ⁋ 23).

7. PALS' civil conspiracy claim against Roberts, Wieman and Pruitt alleged they "acted in concert to make false statements regarding [PALS]." (PALS' Petition ⁋ 34)

8. In the Underlying Lawsuit, Roberts filed a Counterclaim and then, on December 20, 2019, an Amended Counterclaim ("Roberts CC") against PALS.

9. In the Underlying Lawsuit, Wieman and Pruitt filed a Counterclaim against PALS ("WP CC").

10. Count I of both Roberts CC and WP CC alleged abuse of process against PALS, alleging PALS filed the Underlying Lawsuit against Roberts, Wieman, and Pruitt to try and prevent them and others from exercising their free speech and other constitutional rights.

11. Count II of both Roberts CC and WP CC alleged malicious process against PALS, alleging the Underlying Lawsuit was filed by PALS without probable cause, without investigation of the facts to support the allegations in the PALS' Pet., without evidence to support the allegations, despite reasonable grounds to support the allegations, and with malice against Roberts, Wieman, and Pruitt.

12. Both the Roberts CC and WP CC also alleged civil conspiracy between Laura Di Steffano and Jennifer Raeker-Bickel, which was later dismissed.

13. The Roberts CC also alleged Barbara Cherry, acting individually and as a board member of PALS, defamed Roberts (Count IV), and that such was "intentional, malicious, reckless, and due to evil motive".

14. On or about September 15, 2021, Roberts dropped the claim for defamation in Count IV of Roberts CC.

15. After Roberts dropped the defamation claim in Count IV of Roberts CC, the only remaining claims for the trial on September 21, 201, were the claims for Abuse of Process (Roberts CC and WP CC, Count I) and Malicious Prosecution (Roberts CC and WP CC, Count II).

16. After the Counterclaims were filed in the Underling Lawsuit, PALS requested a defense of the Roberts CC and WP CC from Midwest Family under Policy Number CPM00560116436 ("MFM Policy").

17. In September of 2019, MFM sent a reservation or rights letter to PALS offering a defense to PALS against the original counterclaim filed by Roberts ("First ROR"), offering PALS a defense to such counterclaim under a full reservation of rights.

18. In January of 2020, MFM sent a supplemental reservation of rights letter ("Supp. ROR") in response to the WP CC and the Roberts CC, offering a defense to those counterclaims under a full reservation of rights.

19. The "Business Liability" coverage in the MFM Policy is described under SECTION II – LIABILITY, Paragraph **A. Coverages**, Sub-Paragraph **1. Business Liability**, which states:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. . ..
>
> b.  This insurance applies:
>
>   (1) To "bodily injury" and "property damage" only if:
>
>     (a) The "bodily injury" or "property damage" is caused by an "occurrence"
>     . . .

>> (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory during the policy period.

(MFM Policy, BP 00 03 01 10, p. 31).

20. The Policy defines "Occurrence" as "an accident" (BP 00 03 01 10, p. 45), which does not include purposeful acts.

21. "Personal and advertising injury" is defined in the Policy, under Paragraph **F. Liability And Medical Expenses Definitions**, which states:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest . . .
>
> b. Malicious prosecution;
>
> c. The wrongful eviction . . .
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;
>
> e. Oral or written publication . . . that violates a person's right to privacy;
>
> f. The use of another's advertising idea . . .
>
> g. Infringing . . .

(MFM Policy, BP 00 03 01 10, p. 45).

22. Abuse of process and civil conspiracy are not covered by the MFM Policy.

23. The Supp ROR cited and quoted the provision in the MFM Policy cited and quoted in Paragraphs 19-22 of this Counterclaim, above.

24. The Supp ROR informed PALS that abuse of process and civil conspiracy were not covered under the MFM Policy.

25. The Business Liability Coverage under the MFM Policy contained an exclusion that stated:

**B. Exclusions**

  **1. Applicable to Business Liability Coverage**
   This insurance does not apply to:
   …
   **p. Personal And Advertising Injury**
   "Personal and advertising injury":
    (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
    (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
    (3) . . .

(MFM Policy, BP 00 03 01 10, p. 37-38).

26. The Supp ROR quoted the language in the MFM Policy quoted in Paragraph 25, above, and informed PALS such exclusion may exclude coverage, if any, for Counts I, II, and III in both the Roberts CC and the WP CC.

27. The ROR quoted the language in the MFM Policy quoted in Paragraph 25, above, and informed PALS such exclusion may exclude any coverage for Roberts' defamation claim.

28. Therefore, PALS was aware that there was potentially no coverage under the MFM Policy for PALS, and that MFM was providing a defense subject to such reservation of rights, including the right to later deny all coverage, refuse to indemnify PALS for any damage that may be entered against it, and/or withdraw its defense.

29. PALS accepted the defense offered by MFM under a full reservation of rights.

30. PALS did not refuse the defense or demand MFM withdraw such reservation of rights.

31. MFM never withdrew its defense of PALS under reservation of rights.

32. MFM expended over $200,000.00 in the defense of PALS in the Underlying Lawsuit.

33. PALS was aware of the reservation of rights and that there was potentially no coverage under the MFM Policy when it agreed to contribute to the settlement in the Underlying Lawsuit.

34. At the time PALS agreed to contribute to the settlement in the Underlying Lawsuit, it did not state it was agreeing to contribute to the settlement under protest.

35. PALS requested further information from PALS relating to its investigation of the coverage issues raised in the ROR and Supp ROR letters.

36. The MFM Policy imposed certain duties on PALS in the event of a claim being filed against it, including:

> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> …
>
> **c.** You and any other involved insured must:
>
> …
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"

(MFM Policy, BP 00 03 01 10, p. 42)

37. Business Liability coverage under the MFM Policy contains certain conditions, including the following condition:

> **Section III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**
>
> …
>
> **C. Concealment, Misrepresentation Or Fraud**
>
> This policy is void in any case of fraud by you as it relates to the policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> …
>
> **4.** A claim under this policy.

(MFM Policy, BP 00 03 01 10, p. 47).

38. On September 20, 2021, the evening before trial was set to begin for the counterclaims against PALS in the Underlying Lawsuit, the counsel retained by MFM to represent PALS under reservation of rights ("Defense Counsel"), met with Andrew Westerfeld.

39. Andrew Westerfield was the attorney who filed the defamation claims against Roberts, Pruitt, and Wieman on behalf of PALS, and represented PALS in regard to such claims in the Underlying Lawsuit.

40. On September 20, 2021, Andrew Westerfield informed Defense Counsel after the Underlying Lawsuit was filed by PALS, PALS informed him that in or around 2015, a PALS board member took a dog from a neighbor's back yard and took it to PALS, where it was hidden and cared for until PALS facilitated the adoption of such dog to someone out-of-state, all without the owner's consent.

41. Defense counsel then spoke with the PALS board member who was involved in such incident, who confirmed the incident occurred.

42. Although PALS disclosed this information to its own counsel that it had retained to pursue its claims in the Underlying Lawsuit, PALS never disclosed this and other material information to Defense Counsel or MFM until after being confronted with it on the day before trial.

43. This information was material because both the Malicious Prosecution and Abuse of Process claims of the Roberts CC and WP CC were based on the assertion that PALS filed the PALS' Pet. despite knowing the allegations of defamation against Roberts, Wieman and Pruitt were false, and the PALS' Petition alleged, among other things:

   i. Roberts had defamed PALS by stating:

      a. "I admire their rescue stories it takes determination to bring in a stray and never try to find the owner."

      b. That PALS wrongfully adopts pets out from underneath their owners.

  ii. Wieman defamed PALS by stating:

    a. "They are only in it for the money and they decide if you're a good owner and if they think your [sic] not you don't get your animal back. Worker [sic] have even said they hide animals so the owner doesn't know that they are there.",

    b. "If a pet goes there they normally will never go back to there [sic] owner. They always find a way to keep them.", …

  iii. Pruitt Defamed PALS by stating:

    a. "They have dogs knowing they have homes then take them to the city to adopt out so they don't go back to their owners.",

    b. Plaintiff directed its employee to steal the dog known as Bear from Sheila Henkel.

    c. "Pals doesn't seem to care about chips. In the past they've scanned dogs, found chips and still wrote it off as a stray."

44. This information was material because it supported the Roberts CC and the WP CC, in that it supported the veracity of the statements PALS' Petition for defamation were based upon, and PALS' knowledge of such veracity while alleging the statements were false.

45. This information was material because the events admitted by the PALS board member establishes the Counterclaims were excluded under the MFM Policy, pursuant to the exclusion stated above.

46. Both the Malicious Prosecution and Abuse of Process claims of the Roberts CC and WP CC were based on the assertion that PALS filed the PALS' Pet. despite knowing the allegations of defamation against Roberts, Wieman and Pruitt were false, and the PALS' Petition alleged, among other things.

## **COUNT I – BREACH OF CONTRACT**

  COMES NOW, MFM, and for Count I of its Counterclaims against PALS, alleges and states:

47. MFM incorporates into this Count, by reference, every allegation and averment contained elsewhere in MFM's Counterclaim.

48. PALS breached the MFM insurance policy at issue by failing to "[c]ooperate with [MFM] in the investigation or settlement of the claim or defense against the [counterclaims in the Underlying Lawsuit]" by, among other things, concealing and/or failing to disclose material facts concerning the defense of the counterclaims, and/or failing to provide the information requested from PALS in MFM's ROR.

49. PALS breached the MFM insurance policy at issue by intentionally concealing or misrepresenting at least one material fact concerning PALS' claim under the MFM policy, specifically the defense against the counterclaims in the Underlying Lawsuit.

50. Due to PALS breach of contract, MFM expended over $200,000.00 in costs and fees in defense of PALS in the Underlying Lawsuit that could have been avoided.

51. Due to PALS breach of contract, MFM expended substantial costs and fees in defense of PALS in the Underlying Lawsuit defending claims that would not have been covered under the MFM Policy if such information had been disclosed to MFM.

52. Due to PALS breach of contract, through intentionally concealing or misrepresenting such material information, the policy was void and PALS must repay MFM for all amounts expended by MFM in defense and settlement of the Underlying Lawsuit.

WHEREFORE, MFM prays the Court enter judgment in its favor and against PALS for PALS breach of contract, in an amount in excess of $75,000, for the amounts MFM expended in defense and settlement of Underlying Lawsuit, and for such other relief as the Court may deem just and proper.

## COUNT II – UNJUST ENRICHMENT

COMES NOW, MFM, and for Count II of its Counterclaims against PALS, alleges and states:

53. MFM incorporates into this Count, by reference, every allegation and averment contained elsewhere in MFM's Counterclaim.

54. MFM expended substantial costs and fees in defense of PALS in the Underlying Lawsuit that could have been avoided.

55. Due to PALS intentionally concealing or misrepresenting material information, as detailed above, the MFM policy at issue was void in regard to the Underlying Lawsuit.

56. PALS knowingly accepted and retained the defense provided by MFM under a reservation of rights while knowingly withholding information that would establish the lack of coverage under the MFM Policy.

57. Due to PALS failure to disclose such material information while retaining the benefit of the defense being provided by MFM, it would be unjust to allow PALS to retain such benefit of the cost expended by MFM in such defense.

WHEREFORE, MFM prays the Court enter judgment in its favor and against PALS in an amount in excess of $75,000, for the amounts MFM expended in defense and settlement of Underlying Lawsuit, and for such other relief as the Court may deem just and proper.

## COUNT III – INTENTIONAL MISREPRESENTATION

COMES NOW, MFM, and for Count III of its Counterclaims against PALS, alleges and states:

58. MFM incorporates into this Count, by reference, every allegation and averment contained elsewhere in MFM's Counterclaim.

59. In accepting the defense against the counterclaims in the Underlying Lawsuit, PALS intentionally and knowingly misrepresented to MFM and/or Defense Counsel that PALS had not committed abuse of process or malicious prosecution in that the defamation claims of PALS against Roberts, Wieman, and Pruitt were not filed without probable cause or investigation.

60. However, PALS knew such was false because it knew the defamation claims by PALS against Roberts, Wieman, and Pruitt were filed without probable cause or investigation in that PALS alleged certain statements of Roberts, Wieman, and Pruitt were false although PALS knew such statements were true.

61. MFM justifiably relied on such misrepresentations in providing a defense to PALS against the counterclaims in the Underlying Lawsuit.

62. Due to the intentional misrepresentations of PALS, MFM was damaged in the amount it expended in providing a defense and settlement of PALS in the Underlying Lawsuit.

WHEREFORE, MFM prays the Court enter judgment in its favor and against PALS in an amount in excess of $75,000, for the amounts MFM expended in defense and settlement of Underlying Lawsuit, and for such other relief as the Court may deem just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION

COMES NOW, MFM, and for Count IV of its Counterclaims against PALS, alleges, in tha alternative to Count III:

63. MFM incorporates into this Count, by reference, every allegation and averment contained elsewhere in MFM's Counterclaim.

64. In accepting the defense against the counterclaims in the Underlying Lawsuit, PALS misrepresented or withheld information material to the defense against the claims for abuse of process and malicious prosecution, including but not limited to that stated above.

65. Due to PALS failure to exercise reasonable care in disclosing material information relevant to the defense of the counterclaims in the Underlying Lawsuit, MFM incurred substantial expense in the defense and settlement of the counterclaims in the Underlying Lawsuit.

66. MFM justifiably relied on such misrepresentations in providing a defense to PALS against the counterclaims in the Underlying Lawsuit.

WHEREFORE, MFM prays the Court enter judgment in its favor and against PALS in an amount in excess of $75,000, for the amounts MFM expended in defense and settlement of Underlying Lawsuit, and for such other relief as the Court may deem just and proper.

### REQUEST FOR JURY

Defendant demands a trial by jury.

Dated:  11/21/22                                   Respectfully submitted,

SWANSON BERNARD, LLC

*/s/ Matthew M. Hogan*
Matthew M. Hogan, #49632
4600 Madison Ave, Suite 600
Kansas City, MO 64112
(816)410-4600 / (816) 561-4418 – Fax
*Attorneys for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on the 21st of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF, which served the foregoing on all parties of record.

 */s/ Matthew M. Hogan*